CASE No. 916.

STEELE v. ATKINSON.

1. An administrator *de bonis non* cannot maintain an action to set aside a transaction between his predecessor in office and a debtor of the estate, upon the ground of a fraudulent collusion between them.   *Johnston* v. *Lewis, Rice's Eq.* 40, recognized and approved.
2. A receipt for a small amount "in full of this case," endorsed by a sheriff upon an execution, is, in the absence of proof to the contrary, a satisfaction of the execution, although the aggregate of the credits endorsed is less than the sum due.
3. The court will not presume that a sum of money received by the sheriff was for commissions upon a payment made outside of his office, when such sum is more than the fees allowed by law.

Before WALLACE, J., Chester, October, 1879.

To the full statement of this case made by the Circuit judge, it is only necessary to add the terms of the last receipt endorsed upon the execution, viz.: "June 7th, 1873.   Received of V. Atkinson, Sr., thirty dollars in full of this case. (Signed)  B. G. Yocom, sheriff of Chester county."

The Circuit decree is as follows :

McKelvey died many years ago, having survived his wife. He left no lawful heirs, so far as is known or has been discovered in a quarter of a century since his death.   It was not proven, but stated at the hearing, that there were no creditors of his estate.   E. M. Kirkpatrick administered upon the estates of John and Elizabeth McKelvey, and, after protracted litigation, recovered a judgment on October 13th, 1871, for the sum of

$8434.84 against Valentine Atkinson and Elizabeth, his wife. On April 19th, 1873, Valentine Atkinson paid the sum of $1300 on this execution. On May 29th, 1873, he took a receipt from Kirkpatrick for $6000, which is stated in the receipt to be in full of the judgment by way of compromise. It was proved at the trial that at the time the receipt was given by Kirkpatrick, Atkinson paid to him a large sum of money and gave his note for an additional sum. On the night of the same day, Kirkpatrick left the state and never returned.

John G. Steele, the plaintiff, who was one of the sureties on the administration bond of Kirkpatrick, took out letters of administration *de bonis non* upon the estate of John and Elizabeth McKelvey, and brought this action to recover the whole amount of the judgment, less the $1300 paid April 19th, 1873, and $30 paid June 7th, 1873. The complaint charges that the transaction on May 29th, in which the receipt was given for $6000 and money paid and note given, was fraudulent and collusive, in that Atkinson knew that Kirkpatrick intended to misapply the money. Upon this point issues were framed and tried by a jury. The jury found as matter of fact that there was no fraud and collusion on the part of Atkinson. I approve this finding and adopt it as my own.

Out of the foregoing facts two questions arise:

1. Can the payment of a smaller sum, a part of which consists of the debtor's note which the creditor agrees to accept in full satisfaction of his demand, operate to extinguish a debt for a large amount?

Pinnell's case established the rule that the payment of a smaller sum of money would not be allowed to extinguish a debt for a larger sum, even in cases where the creditor agreed at the time of the judgment that it should, on the ground that the agreement was *nudum pactum.*

In Pinnell's case, and many subsequent cases, this doctrine is broadly laid down. It seems to us that this doctrine, if fully applied according to its principle, would defeat every parol gift to any but kindred, even after delivery. No man should be allowed to enforce a contract which he had deliberately, without fraud or imposition, agreed to renounce. Yet on the principle

of *stare decisis* the rule has been allowed to stand. Regarding this rule, however, as "technical," not very well supported by reason, "allowing a violation of good faith," courts have limited its application to cases coming strictly within its terms and have departed from it upon slight distinctions. Hence the rule, that if any chattel is given and received in satisfaction of the debt, no matter how insignificant its relative value, the demand is held to be satisfied. *Eve* v. *Moseley*, 2 *Strob.* 206 ; *Hope* v. *Johnston & Cavis*, 11 *Rich.* 135. *Kellogg* v. *Richards*, 14 *Wend.* 116, cited in Eve *v.* Moseley, holds that the acceptance of a note of a third person for a less sum is a good accord and satisfaction ; that the notes of a third person will operate as an absolute and immediate discharge of the debt for which it is given if such be the understanding and intention of the parties.

The effect of giving and receiving the debtor's own note for a smaller sum in full of the original debt, is not so well settled as the preceding rule ; but it is difficult to perceive any essential abstract distinction.

The question is : Is there a sufficient consideration to support the bargain ? In *Myres* v. *Welles*, 5 *Hill*, (*N. Y.*) 463, Cowen, J., held that "accepting a principal debtor's negotiable note payable at a future time was such a giving of time upon the demand as discharged the surety." The surety was not discharged unless the creditor was bound. The creditor could not be bound without consideration. Hence, the giving a negotiable note for a prior debt is supported by a consideration, because the note might be used in a way beneficial to the debtor. Of course, the effect of such a transaction depends upon the intention of the parties. *Eve* v. *Moseley, supra ; Sibree* v. *Tripp*, 15 *M. & W. Exch.* 22 ; *Draper* v. *Hitt*, 4 *Vt.* 439. Cases might be multiplied from Pennsylvania, New Hampshire, Massachusetts, Alabama.

In the case under consideration, as has been already stated, money was paid and a note given with the understanding that the prior debt was paid. Under the principles above set out, if Kirkpatrick had been the absolute owner of the judgment, the transaction would have been a satisfaction of the debt and a bar to this action. But Kirkpatrick was administrator. The jury

have found that collusion is not imputable to Atkinson. Then the second question in the case is : Is the transaction embraced within the scope of constructive fraud ? Administrators are trustees for the benefit of creditors and distributees ; they hold the title of their intestates for the purposes of the trust. Before the A. A. 1824, (6 *Stat.* 238, § 6,) they were invested with a large discretion as to the sales of the property. They were held to the exercise of a wise and prudent discretion. It was a part of their duty to sell the property of and collect the debts due to the estate. To sell the property and collect the debts was presumably in execution of his trust, and purchasers from him and debtor who paid him were protected by the force of this presumption, unless it was made to appear from the transactions themselves or otherwise that such purchasers or debtors colluded with him or had knowledge that he intented to commit a breach of trust. They were not bound to inquire whether the transaction was necessary and judicious on the part of the administrator ; that was the business of the administrator, and if he did not act within the scope of his authority those who dealt with him had a right to presume that the transaction was necessary or proper in the management of the estate. The A. A. 1824, *supra,* provided that sales of personal property by administrators should not be made save by and under an order from the Court of Ordinary. This act took away the discretion of the administrator as to the conversion of the personal property, and any purchaser of personal property at an administrator's sale made without an order of the [now] Probate Court takes no title. But this power over the choses in action of the estate is unaffected by the A. A. 1824 ; so when these are sold, pledged or collected, the purchaser, pledgee or debtor is protected by the presumption that all is done according to the exigencies of a faithful administration of the estate, unless it appears intrinsically or *aliunde* that he who dealt with him knew that he intended a breach of trust by diverting, misapplying or wasting the assets. If the administrator parts with demands in payment of, or pledges them as security for, an existing debt of his own, or sells them or relinquishes them to a debtor of the estate for a valuable yet grossly inadequate consideration, knowledge of the

transaction is, for the purposes of the trust, imputable to him who takes them, and further proof is not necessary, and, at the instance of those beneficially interested, the taker must account for them. In this case, Atkinson, of course, knew that Kirkpatrick had the right, and that it was his duty perhaps, to collect the debt. If Kirkpatrick agreed to take in satisfaction a smaller sum than the amount of the debt, he had a right to presume that a more speedy conversion than could be affected by levy and sale might be important to the interest of the administration. If the amount, therefore, which Kirkpatrick did agree to take was not grossly inadequate, Atkinson is protected against the equities of those beneficially interested. The amount of the judgment was $8439.84, interest from October 13th, 1871.

On April 19th, 1873, Atkinson paid $1300.

On May 29th, 1873, he paid $6000.

On June 17th, he paid $30.

While the aggregate of the sum paid is not equal to the amount of the debt, it cannot be said that it is grossly inadequate. It is needless to enter into a discussion of the difference between mere inadequacy and gross inadequacy. It is, perhaps, impossible to lay down an arbitrary rule as to precisely where one begins and the other ends; it is a matter that is governed by the circumstances of each case and addresses itself to the sound discretion of the court. Under the circumstances of this case, I do not think the extent of the inadequacy was sufficient to suggest to Atkinson a breach of trust on the part of the administrator.

I have not thought it necessary in this decree to pass upon the liability of the administrator.

It is ordered and adjudged that the complaint be dismissed without costs.

Plaintiff appealed.

*Messrs. W. B. Wilson* and *G. J. Patterson,* for appellants.

*Mr. John J. Hemphill,* contra.

September 6th, 1880.   The opinion of the court was delivered by

McIVER, A. J.   E. M. Kirkpatrick, as administrator of the McKelvey's, recovered a judgment against the defendants for a large sum of money, and on May 29th, 1873, gave to the defendants a receipt acknowledging the payment " by them of $6000 in full of the balance of the debt and interest in this case," a memorandum of which was entered on the execution by the sheriff.   There are also two other credits entered upon the execution by the sheriff, one dated April 19th, 1873, of $1300, expressed to be "in part of this case," and another of $30, dated June 7th, 1873, expressed to be " in full of this case."   The letters of administration previously granted to Kirkpatrick having been revoked, and letters of administration *de bonis non* having been granted to the plaintiff, he brings this action in that capacity.   The plaintiff, in his complaint, recognizes the validity of the first credit of $1300, and without taking any notice whatever of the last credit of $30, which, as we have seen, is expressed to be "*in full of this case*," seeks to have the entry of the credit of $6000 vacated and set aside, and the judgment enforced for the balance due thereon, after deducting the credit of $1300 on April 19th, 1873, upon the ground of a fraudulent collusion between the former administrator, Kirkpatrick, and the defendants.

It appears to us that the plaintiff, in the outset, encounters an insurmountable obstacle which effectually prevents him from maintaining this action.   He, as administrator *de bonis non,* is seeking to set aside a transaction between his predecessor and a debtor of the estate upon the ground of a fraudulent collusion between them.   He is not asking that the estate be protected from a fraud practiced upon his predecessor, the former administrator, but the ground of his complaint is that such preceding administrator himself fraudulently colluded with the debtor to the prejudice of the estate.   The case of *Johnston* v. *Lewis, Rice's Eq.* 40, conclusively shows that the plaintiff cannot maintain the action.   In that case the plaintiffs, as administrators *de bonis non,* attempted to set aside a sale of property of their intestate upon the ground that the same was made by a fraudu-

lent collusion between their predecessor, the former administratrix, and the defendant, who was the purchaser at the sale. In the Circuit decree, Johnston, Ch., at pages 42–3, says: "It is true that both creditors and distributees, if defrauded in any manner by the sale, might bring their bill against Lewis and the administratrix, and set it aside for collusion between them. But the administratrix, as such, could never impeach a transaction for a fraud to which she was a party. Then the question is whether these plaintiffs can set the sale aside. They are neither creditors or distributees. This bill is not filed in either of these characters. The plaintiffs come forward as successors in office to Mrs. Pickett to unravel transactions by which she was bound. But nothing seems plainer than that all acts binding upon a predecessor are equally binding upon a successor." And, Harper, Ch., in delivering the opinion of the Court of Appeals, at page 48, says: "We concur with the Chancellor that the present complainants, the administrators *de bonis non*, stand in the place of the first administratrix, and are bound wherever she could be bound, and concluded by whatever would conclude her. * * * The administratrix, in general, represents all creditors and distributees, and they cannot be heard but through her, and are bound by her acts. Only in the case of a fraudulent collusion to misapply the assets, these may be followed by creditors and distributees themselves, but certainly not by her successors in administration." In this case there are no creditors or distributees before the court complaining of a waste or misapplication of the assets, and, from what is stated at the bar, it is not likely there ever will be, as it is said that none have been discovered in the quarter of a century which has elapsed since the death of the intestate.

But even were the action maintainable by a person occupying the position of the plaintiff, it must fail, in this instance, for the want of sufficient proof of the allegations upon which it rests. The finding of the jury, approved by the Circuit judge, negatives the fraud charged, and it would require much more testimony than we have been able to discover in the "case" submitted here to warrant us in disregarding their concurrent finding.

It is contended, however, that as matter of law the payment of a smaller sum at or after the day the debt is due, can never operate as a satisfaction of a greater sum, and that the plaintiff is therefore entitled to enforce the execution for the balance which may be found due after deducting all the amounts credited on the execution. Without entering at this time into any discussion of the rule of law upon which this position is based, it is sufficient for us to say that it does not apply in the present case, for it ignores the fact that there is another credit upon the execution, subsequent in date to the one under consideration, which the sheriff acknowledges to be "*in full.*" Such a receipt, in the absence of any proof to the contrary, must be given its full force, and amounts to an acknowledgment that the whole amount due has been paid. For, though it may be shown by actual calculation that the amount mentioned in the receipt, added to the other credits endorsed, would not extinguish the whole amount due, yet the acknowledgment that it is *in full* presupposes that there were other payments, and, until such is shown not to be the fact, it must be given the effect of a receipt in full. *Henderson* v. *Moore,* 5 *Cranch* 11 ; *Trimmier* v. *Thomson,* 10 *S. C.* 190. The answer made to this by the appellant's counsel, upon the argument here, that the amount acknowledged by this last mentioned receipt simply represented the sheriff's commissions on the $6000, rests wholly upon conjecture, and is without any testimony whatever to support it. The receipt does not specify that it was for costs or commissions, and no witness has so testified. It is a mere conjecture, and one too which we are not likely to entertain ; but, on the contrary, according to well established principles, we are bound to infer that such was not the fact. The rule of law undoubtedly is that, in the absence of any evidence to the contrary, the presumption is that a public officer has done his duty—not that he has violated it. Now, according to the statute in force at the time when the $6000 payment was credited, (act of February 26th, 1873, 15 *Stat.* 388,) the sheriff was only entitled to one-fourth of one per cent. commissions upon all moneys paid out of his office upon executions lodged in his office ; and, therefore, before we could presume that the amount mentioned in the receipt represented the sheriff's

L

commissions upon the $6000, we would have to presume that this officer, in gross violation of his duty, had exacted just twice as much as he was entitled by law to claim, and had thereby rendered himself liable to heavy penalties. Such a presumption, directly opposed as it is to the rule of law above stated, is not permissible.

We do not see how, in any view of the case, the plaintiff can maintain this action, and the judgment of the Circuit Court is therefore affirmed.

WILLARD, C. J., and McGOWAN, A. J., concurred.